Isaac B. Brown, W. W. Morgaridge, Frank H. Button, C. P. Rogers, Jr., J. A. Lossee and F. Stanford, *v.* The City of Corry, R. N. Seaver, Mayor, Martin Stark, Treasurer, W. C. Shields, Controller, Claude Porter, City Clerk, G. D. Gilbert, City Engineer, D. L. Dewey, Edward Kinley, Joseph Mortz, Elmer M. Love, James Drown, Chas. Porter, T. A. Edwards, Geo. Thomas, Sr., Frank Heath, J. A. Farnham, Henry Cogswell, E. D. McKenzie, J. R. Brigham, Rus. Hammond and C. Halter, Councilmen of said City of Corry, and Joseph F. Witmer, of the City of Buffalo and State of New York, Appellants.

*Municipalities — Municipal indebtedness — Increase of indebtedness— Plant for water works—Constitutional law.*

A contract was entered into by a municipality whose indebtedness was in excess of the constitutional limit to purchase the plant of a water works from W., to be paid for by twenty annual installments out of the " current revenues and not otherwise " of the city. *Held*, that it was the creation of a debt, and, therefore, a violation of the constitutional provision prohibiting the incurring of an indebtedness beyond certain prescribed limits.

Argued April 30, 1896. Appeal, No. 285, Jan. T., 1896, by defendants, from decree of C. P. of Erie Co., May T., 1895, No. 5, on bill in equity. Before Green, Williams, McCollum, Dean and Fell, JJ. Affirmed.

Bill in equity to restrain the performance of a municipal contract.

The facts appear by the opinion of the court by Gunnison, P. J., which was as follows:

1. The plaintiffs are citizens and taxpayers of the city of Corry.

2. The city of Corry was incorporated by act of assembly approved March 8, 1866 (P. L. 146), which, with its supplements and such general statutes as are applicable to it, prescribes its powers, and confers whatever authority it possesses to enter into the contract which is the subject of this complaint.

3. The provisions of the act of May 23, 1874, popularly known as the "Wallace Act" have never been accepted by the city.

4. The bonded indebtedness of the city was on the 25th day of March, 1895, $116,300, and remains the same, which amount is conceded to be in excess of the indebtedness authorized by the constitution.

5. On March 25, 1895, without any ordinance having been enacted authorizing it, without having obtained the assent of the electors, and without any public notice, but by authority of a resolution introduced and adopted that night, the officials of the city entered into a contract with Joseph F. Witmer, by which he agreed to construct a system of water works for the city and deliver the same to the city complete, which water works are then to be operated and controlled by the city, but the title to which is to remain in the said Witmer until the final fulfillment by the city of its part of the contract.

The contract provides for the payment to Witmer of $6,000 annually for twenty years, and for depositing, in addition, in some trust company the annual sum of $3,000 or $4,000 as it may elect for twenty years, the whole amount to be then given to Witmer with the accumulated interest, in case the city elects to deposit $3,000 annually, the city to be entitled to the interest in case it elects to deposit $4,000. Upon the performance by the city of its part of the contract, Witmer agrees to transfer the system of water works to the city.

6. By a "supplementary statement" signed, sealed and acknowledged by Joseph F. Witmer, April 19, 1895, it is declared by him to have been the original intention of the parties to the agreement that the annual payments and deposits provided for by the agreement "are payable, and shall be paid and set aside annually from the current revenues of said city and not otherwise;" and further, "if the said revenues are insufficient to meet the payments and deposits as aforesaid, that then the interest of the city in said works shall revert to said J. F. Witmer or his assigns, and the contract shall be terminated."

Other facts were proved or attempted to be proved by the parties, but in view of the conclusions I have arrived at, they are immaterial, and I therefore make no finding as to them.

## CONCLUSIONS OF LAW.

It is conceded by the learned counsel for the defendants that if the contract as explained by the supplementary statement of Witmer, creates an indebtedness of the city, within the meaning of the constitution, it must be held invalid, for the reason that the indebtedness of the city now existing exceeds the constitutional limit. But it is contended that the liability to pay being, by the admission and declaration of Witmer, limited to the "current annual revenues" of the city, no indebtedness within the meaning of the constitution is incurred.

Section 8 of article IX. of the constitution provides that "the debt of any county, city, borough, township, school district, or other municipal or incorporated district, except as herein provided, shall never exceed seven per centum of the assessed value of taxable property therein, nor shall any such municipality or district incur any new debt, or increase the indebtedness exceeding two'per centum upon the assessed valuation of property, without the assent of the electors thereof, at a public election, as shall be provided by law."

Whether the liability of the city under this contract is an indebtedness within the meaning of the constitution as construed by the Supreme Court, depends in my opinion solely upon the answer to the question : Is its purpose to provide for the paying of what may be called a part of the ordinary expenses ? If the answer is yes, it is within the power of the council to enter into if it is, "together with other like expenses within the limits of its (the city's) current revenues," although the appropriation and provision for the payment of the aggregate payments and deposits are not made in advance, a liberal and strict construction of the language of the constitution would class the liability as a debt. There is, unquestionably, an obligation under the contract for a term of years to supply any articles necessary for the government of the city, the cost of which is an ordinary expense, to pay the aggregate amount contracted for during the entire term, which under any definition I have seen must be termed a debt; and if the aggregate amount increases the indebtedness of the city beyond the constitutional limit, under a strict construction of the constitution, such a contract cannot be sustained.

Such is the construction given to similar constitutional prohibitions in some of the states.

In other states, the courts have decided that such a liability is not a debt such as was contemplated by the constitution in the section quoted.

It was seen that great and otherwise unnecessary inconvenience and expense, and in some cases absolute impossibility of providing for what in this age may be called necessaries for the health and comfort of the inhabitants of cities, or for the administration of the municipal government would result from adhering to a strict construction, and it was held "when a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses within the limit of its current revenues, and such special taxes as it may legally and in good faith levy therefor, such contract does not constitute the incurring of an indebtedness within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts." Our own Supreme Court has said, "This is a sound constitutional interpretation," and its reason must be apparent to all. The ordinary expenses, at least many of the ordinary expenses, must be incurred and paid, or the city cannot exist. It cannot be supposed that the framers of the constitution intended to prevent municipalities from deriving the benefit that may accrue from favorable contracts for a term of years for supplying what must certainly be had, and must be otherwise provided for annually, at perhaps additional expense and inconvenience. And any expense that recurs with regularity and certainty, and is necessary for the existence of the municipality or for the health, comfort and perhaps convenience of the inhabitants, may well be called an ordinary expense.

I have found no decision which extends this construction to the case of an extraordinary expense.

The language quoted by the learned counsel for the defendants from the cases in this state, Appeal of City of Erie, 91 Pa. 398; Wade v. Oakmont Boro., 165 Pa. 479, might, standing alone, without reference to the context or the facts upon which the decisions were made, seem to be broad enough to sustain the contention. But, from a reading of the opinion in full, it is very apparent that the rule laid down by the Supreme Court is as I have stated it.

What then is the nature and purpose of this contract? Is it

a contract for the supplying the city of Corry with water for public and private use for a term of years? If so it does not create an addition to the municipal indebtedness. Or is it a contract to supply the city a "system of water works," something to be furnished all at once, and not continuously through the whole term, covered by the contract? Is the consideration for the city's engagement "received at once instead of being yielded in the future or at intervals?" If it is, unless the agreement that the installment shall be paid only from the current revenues modifies the liability, it creates a debt within the constitutional prohibition.

It seems to me that by no reasonable construction can the contract be deemed one for the supplying the city with water, but it is one for furnishing it with a plant to be delivered to it at once, to be paid for by the city in installments. The carefully worded specifications as to the material to be used, and the work to be done, the character and capacity of the machinery, and building to be supplied and erected, the provision for the operating the works by the city and at its expense, the delivery of possession to the city, are all inconsistent with any other purpose than that of purchase and ownership of the water works by the city, even if the engagement to pay could be only a liability to pay for the supply of water. That engagement is, however, plainly an agreement to pay the several installments, as purchase money for the plant, and not for the annual supply of water. The cost of erecting such a plant is a most extraordinary, and not in any sense an ordinary expense.

Notwithstanding the ingenious argument of the counsel for the defendants, I can see a very clear distinction between "a contract for the supply of water, and one for the means of furnishing the supply." The one may pertain to an ordinary expense, and the other, if it involves municipal purchase and ownership of the means of furnishing the supply, can only pertain to an extraordinary expense.

In the original contract of March 25, 1895, there was no limitation of liability to current revenues. Upon that contract, in absence of any limitation upon the power of the city to contract, the city would become liable to pay to Witmer $120,000 in annual installments of $6,000 each the collection of which could be forced by action upon default.

The contract, so far as it expresses the intention of the parties to it upon its face, is precisely similar in principle to the contract in the city of Erie's App., 91 Pa. 398, which was upon facts similar to these existing in the case determined beyond the power of the municipality to make.

But it is contended by the learned counsel for the defendants that the whole contract, as expressed on the face of the paper of March 25, 1895, and the "supplementary statement" of April 19, 1895, construed together does not constitute a debt within the meaning of the constitution, because the liability of the city to pay is limited to its liability to pay from the current annual revenues, and cannot be forced by action.

Waiving the considerations of the questions raised by the learned counsel for the plaintiffs as to whether the execution of the paper of April 19 is not a violation of the preliminary injunction, which had then been issued and served, and also as to whether it will, either as a contract or by way of estoppel, prevent the contractor from successfully proceeding to collect upon default upon the liability as expressed in the contract of March 25, 1895, I cannot see that it changes the rights of the parties or the situation to the extent claimed for it. The rule that the making of a contract pertaining to ordinary expenses for a term of years, creating a liability which the city has clearly the power to meet annually from its current revenues, does not extend to a contract pertaining to an extraordinary expense as I have attempted to show.

But, in addition, the liability to pay the $6,000 annually is a debt, payable from a special fund, or in a special manner, and upon default, each installment may be collected by action, provided the current revenues of the year are sufficient to pay it.

It is a conceivable case that the payments provided for may be made for ten years, when a council elected upon an issue which may easily arise, as to whether the policy adopted by the city for procuring water works shall be continued, shall refuse to make payment of the installment due the eleventh year, and make no appropriation therefor, notwithstanding the revenues for the year are amply sufficient for the purpose. In such a contingency, the contractor would have a clear right to enforce the payment of the eleventh installment, if the contract were a valid one. How, then, can it be said that the amount agreed to be paid is not a debt?

Moreover, it is a debt secured by the payments that will have already been made, and equitable interest existing thereby in the city, will become forfeited upon default in paying the installment then due. It is a debt for the purchase money, and in principle analogous to the debt for purchase money for land, for which a mortgage has been given with no accompanying personal obligation, which is universally termed a " mortgage debt."

In the case I have supposed of the payment of the installment for a series of years, the interest acquired by the city is hypothecated to secure the payment of the remainder of the debt, and in principle cannot be distinguished from the case of the mayor and city council of Baltimore v. Gill, 31 Md. 375, cited by the counsel for the plaintiff, in which the city of Baltimore attempted to borrow money by hypothecating certain shares of stock owned by it, with the provision that the stock should be liable for the debt. In the opinion in that case the Court say : " It has been argued that no debt has been created by the ordinance, because, by the second section, it is provided that the parties loaning the money shall look for its repayment exclusively to the stock pledged, and that in no event is the city liable or responsible for the return or repayment of any part thereof, even though the stock pledged should prove insufficient.

" This provision was doubtless adopted for the purpose of avoiding the restriction imposed by the constitution. We think it altogether insufficient for that purpose."

A debt is money due upon a contract, without reference to the question of the remedy for its collection. It is not essential to the creation of a debt that the borrower should be liable to be sued therefor.

" The plain interest of this section is to restrain the municipal government of Baltimore from borrowing money except for the purposes and in the manner prescribed either upon the general credit of the city, or by a pledge of its revenues or assets ; thereby creating a debt and imposing additional burdens upon the citizens, which may directly or indirectly involve increased taxation."

In Newell v. The People, 3 Seld. 9, it was also held that the borrowing of money, to be paid from certain revenues, and not

BROWN et al. *v.* CITY OF CORRY et al. Appellants. 535

1896.]        Opinion of Court below—Arguments.

otherwise, was the creation of a debt, and as such a violation of the constitutional provision prohibiting the incurring of an indebtedness beyond certain prescribed limits.

I have examined, so far as they are accessible, the authorities cited to sustain the position of the defendants, and I can find none which is inconsistent with the conclusions at which I have arrived, while many can be cited sustaining these conclusions.

It is unnecessary to consider the other legal questions involved, which were argued at length by counsel. Those already considered are decisive.

The importance of as speedy a decision as possible deters me from citing and quoting from the many authorities I have consulted, although the importance of the interest involved would justify such a course.

And now, August 15, 1895, it is ordered, adjudged and decreed that the preliminary injunction heretofore awarded be made final and the city of Corry, its officers, agents, attorney and employees are perpetually enjoined from proceeding further upon the performance of the contract attempted to be made between the said city and Joseph F. Witmer, March 25, 1895, and April 19, 1895, and the said Joseph Witmer is perpetually enjoined from entering in or upon the streets or alleys of said city for the purpose of performing the said contract.

And it is further ordered, adjudged and decreed that the defendants pay the costs of this proceeding.

*Error assigned* was decree of the court.

*Albert B. Osborne, Thomas Roddy* with him, for appellants. —The contract was for the supply of water for the use of the public: Nichol v. Mayor etc., 9 Hun, 171; Grant v. City of Davenport, 36 Ia. 396.

The contract was not a creation of debt: Burlington Water Co. v. Woodward, 49 Ia. 58; Dively v. Cedar Falls, 27 Ia. 227; Valparaiso v. Gardner, 97 Ind. 1; Lacock v. City of Baton Rouge, 35 La. 475; State of California v. McCauley, 15 Cal. 429; People v. Arguello, 37 Cal. 524; Carlyle Water Co. v. Carlyle, 31 Ill. 325; City of E. St. Louis v. E. St. Louis Co., 98 Ill. App. 415; Merrill Ry. & Lighting Co. v. Merrill, 49 N. W. Rep. 965.

Under the authorities cited and the facts established by the testimony we respectfully submit our contentions to the decision of the court, and say,

1. That the contract calls for such expenditure as is included in the term ordinary current expenses.

2. That such expenditure is within the current annual revenues of the city.

3. That even if it were not, no liability exists (because of the contract itself) whenever the revenues fail to equal this and all other annual expenses.

4. That therefore no indebtedness is created within the meaning of the constitutional prohibition, and the contract should be sustained.

*C. George Olmstead* and *M. E. Olmsted*, for appellees, were not heard but argued in their printed brief: The contract imposes upon the city an indebtedness beyond the constitutional limit and for a purpose not pertaining to its ordinary and current affairs: City of Erie's App., 91 Pa. 398; Wade v. Oakmont Borough, 165 Pa. 479; Scott v. Davenport City, 34 Iowa, 208.

In some states, having similar constitutional provisions, the courts go much further and hold that a city cannot incur any liability even for its ordinary expenses if the constitutional limit has been reached: Prince v. Quincy, 105 Ill. 138; Springfield v. Edward, 84 Ill. 626; Law v. People, 87 Ill. 385; Fuller v. Chicago, 85 Ill. 282; Prince v. Quincy, 128 Ill. 443; Fuller v. Heath, 89 Ill. 297; Sackett v. New Albany, 88 Ind. 473; Shaw v. Statler, 74 Cal. 258; San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; Schwartz v. Wilson, 75 Cal. 502.

PER CURIAM, May 18, 1896:

Notwithstanding the very able and interesting argument of the learned counsel for the appellants, we are not convinced of any error in the decree rendered in this case. The findings of fact and the conclusions of law expressed by the learned judge of the court below, are in entire accord with our views, and we therefore affirm the decree upon the opinion filed.

Decree affirmed and appeal dismissed at the cost of the appellants.