CARSTENS BROS., a Co-partnership, Appellant, v. CONSOLIDATED INDEPENDENT SCHOOL DISTRICT of Bayard, Appellee.

No. 42384.

JUNE 23, 1934.

REHEARING DENIED OCTOBER 18, 1934.

Pike, Sias, Zimmerman & Butler, for appellant.

Batschelet & Vincent, and Wilson & Harris, for appellee.

STEVENS, J.—This is an action originally commenced at law, but, during the trial, which by agreement of counsel was to the court, upon motion, was transferred to equity, to compel the appellee Consolidated Independent School District to provide funds therefor and to apply the same to the payment of four warrants of $1,000 each, two warrants of $500 each and one warrant of $890.80 issued by said district to appellant in final settlement of the amount

due on a contract had with said district to provide the material and perform the labor necessary for the installation of a power, heating, and ventilating system for a school building already erected, or then in process of erection by said district at Bayard, Iowa. The contract, which was entered into between the said parties on October 25, 1921, obligated the appellant to install the aforesaid system for a consideration of $20,544. The said contract contained the following provision for the payment of said sum:

"Payments on account of the contract to be made on certificates of the Architect in accordance with the terms of the specifications under the heading 'Estimates' page 3 of the original specifications. Monthly estimates upon which certificates are to be issued shall cover labor and material placed in the building and materials placed on the building site during the previous month; said certificates to be issued for not more than eighty-five per cent (85%) of such monthly estimate. In payment of these certificates, the Contractor shall accept, and the Owner shall cause to be issued, the warrants of the said School District bearing interest at the rate of 6% per annum from date of issue, and until paid. Said warrants to be retired as bonds are issued by the Board provided for under Senate File No. 589 as passed by the Thirty-Ninth General Assembly, Final Payment to be made only upon completion and acceptance by the owner."

Prior to the date of said contract and on July 22, 1921, the electors of the appellee district, at a special election called for that purpose, in pursuance of the provisions of Senate File No. 589, chapter 335, Laws of the Thirty-ninth General Assembly, voted in favor of a tax not to exceed 10 mills per year on the taxable property of the district for a period not to exceed ten years for the purpose of building, constructing, and equipping a new schoolhouse within said district. The tax thus authorized to be levied was certified to and levied by the boards of supervisors having jurisdiction and bonds were sold to the amount of $43,000. Out of the proceeds of the sale of said bonds, appellant was paid $14,866.50, leaving the balance due him as evidenced by the warrants in suit. Additional payments were made therefrom to one other contractor and for material used in said building. The balance remaining after the said payments were made, amounting to $5,019.76, was on July 1, 1923, transferred to the schoolhouse fund. It will thus

be observed that the warrants in suit were issued subsequent to the final exhaustion of the sum derived from the proceeds of the sale of bonds.

Chapter 335, Laws of the Thirty-ninth General Assembly, enacted as an emergency law, so far as material to this controversy is as follows:

"Section 1. Emergency tax. That the board of directors of any independent school district or consolidated school district in which there is at time of taking effect of this act, under process of construction, or in which because of destruction by fire prior to the taking effect of this act, it is necessary to construct a school building, for the completion of which building the funds of such district now provided by bonds already voted, issued, or by tax receipts for the current year, or funds for which it is possible to provide, are inadequate, may at their regular meeting in July or at a special meeting called for that purpose between the time designated for such regular meeting, and the third (3rd) Monday in August, 1921, if a majority of the votes cast are in favor of the proposition at an election in which the proposition is submitted to the people, certify an amount not exceeding ten (10) mills on the dollar of the taxable property of said district, and for a period of years not exceeding ten (10), to the board of supervisors; and the board of supervisors shall levy the amount so certified and for the years so designated, and the tax so levied shall be placed in a special school house fund and used only for the purpose of paying for the school site, the construction of said school building and the equipment thereof, or for the purpose of paying bonds or certificates issued for the raising of money for said purposes.

"Sec. 2. Anticipation of tax. Any such school district may anticipate the collection of taxes authorized to be levied for such special school house fund as in this act provided, and for that purpose the board of directors of said district may issue certificates or bonds with interest coupons attached, to be respectively denominated special school house fund certificates or bonds of such school district. Said bonds or certificates and interest thereon, shall be secured by said taxes so levied, and shall be payable only out of such special school house fund hereinbefore named, which shall be pledged to the payment of the same, and no bonds or certificates shall be issued in excess of taxes so authorized and levied, to secure the payment of the same. It shall be the duty of the said school

district to hold the said fund separate and apart in trust for the payment of said bonds or certificates and interest, and to apply the proceeds of said fund to the payment thereof."

There is no dispute in the evidence as to any of the material facts. The parties are agreed that if the warrants in controversy are, in fact, general obligations of the district, they are void for the reason that the indebtedness of the district exceeded its constitutional limitation at the time the contract was entered into between the district and appellant. The position of appellee is readily deducible from the foregoing implied concession of appellant. Appellant meets the theory of appellee with the contention that the warrants are not general obligations of the appellee district, but that, when properly considered, the contract between the parties provides, in fact, for a special fund which in equity must be deemed a trust fund for the payment of appellant. This contention assumes that appellee, therefore, occupies the position of a trustee for the benefit of appellant. The warrants in controversy are, in form, general orders upon the school treasurer and, upon presentation thereof to said treasurer, were indorsed "not paid for want of funds." Presentation of the warrants was made on the date of issue. So far as the terms and provisions of the contract are concerned, it merely provides for the issuance of certificates to appellant upon estimates of the architect in charge of the work. Appellant further agrees, by the terms of the contract, to accept warrants of the school district bearing interest at the rate of 6 per cent per annum in payment of said certificates. The said warrants to be retired as bonds are issued by the board under the authority conferred by chapter 335, Laws of the Thirty-ninth General Assembly. Although not specifically so provided, it is contended by appellant that it is to be implied from the foregoing provisions of the contract that the warrants issued to appellant were to be paid out of the proceeds of the sale of the bonds authorized to be sold at the special election to which reference has already been made, and that the same are pledged for that purpose. The contract, however, does not in precise or definite language pledge the proceeds derived from the sale of bonds exclusively to the payment of the warrants when issued. It is, however, the contention of appellant that when these provisions of the contract are construed in the light of chapter 335, Laws of the Thirty-ninth General Assembly, the funds must be held to be a special trust fund for the payment

thereof. Taxes to accrue from the 10-mill levy upon the taxable property of the appellee district are required by section 1 of the aforesaid act to be placed in a special schoolhouse fund to be used only for the purpose of paying for the schoolhouse site, the construction and equipment of the building, or in payment of bonds or certificates issued for the raising of money for said purposes. The taxes levied and collected in this case could not have been properly placed in a special schoolhouse fund for the purpose of paying the warrants issued to appellant. This is true for the reason that the bonds were, in fact, sold and the taxes, as collected, are required by the act to be placed in a special schoolhouse fund to be used only for the payment of said bonds. The pledge of the funds in the event bonds are sold is for the exclusive purpose of paying such bonds. The bonds by specific provision of the act "shall be secured by said taxes so levied and shall be made payable only out of such school house fund heretofore named." The special fund to be constituted under the act and permissible under proceedings had by the district was available only for the purpose of paying the bonds.

As thus construed, did the proceeds derived by the district from the sale of bonds become a trust fund for the payment of the obligations assumed by the district to appellant? It must be assumed that the appellee district entered into the contract with appellant in good faith and with the belief that it had funds then, or later as such would become available, for the payment of the obligations assumed. To assume otherwise would be to impugn the good faith of the officers of the district. They may or may not have known that the district had already passed its constitutional limit of indebtedness. If, upon the record before us and upon sound legal grounds and equitable principles, the court may conclude that the proceeds of the sale of bonds was intended by the parties to constitute a special trust fund to be used only for the payment of the district's obligations to appellant, then such conclusion, in furtherance of justice, should be reached. The question is: Will the record before us bear a construction that will justify and support a conclusion such as is here suggested? Clearly, there is nothing in the provisions of chapter 335, Laws of the Thirty-ninth General Assembly, authorizing the creation of a trust fund out of which to pay obligations such as are here involved. The act merely provides for the sale of bonds and the payment of warrants issued as

provided in the contract before us out of the proceeds of the sale of said bonds. The sum thus arising is not, in terms, or in the contemplation of the framers of the act, to be held as a trust fund to be used exclusively for that specific purpose. It becomes available therefor, but not as a trust fund for the payment of the obligations of the district. The warrants to be issued to appellant under his contract in exchange for certificates are to be retired as bonds are issued by the board under the provisions of Senate File No. 589. In other words, the certificates are to be retired, warrants issued, and paid as authorized by the act.

Chief reliance of appellant, in support of the major proposition urged upon this appeal, is upon Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620. The holding in that case is based upon an entirely different legislative enactment and state of facts. The statutes involved in the Swanson case authorized cities of the first class to purchase or erect waterworks and to pledge certain taxes and income from the waterworks to the payment of the cost thereof and provided that no part of the general fund of such cities should be applied upon bonds or mortgages issued in the erection or purchase of such waterworks. The ordinance of the city of Ottumwa authorizing the construction of a system of waterworks required that the cost thereof be paid out of a special fund to be created as therein provided and authorized by law and not otherwise. That is to say, no part of the cost of said improvement should ever be paid out of the general funds of the city or out of any fund or the proceeds of any tax, except as were specifically pledged therefor. This court, under the facts of that case, held that the obligations assumed were not general obligations of the city and that they did not constitute a debt thereof within the meaning of the Constitution. The two cases are wholly dissimilar both in fact and character. In the Swanson case, the fund provided for was authorized by the statute which, in the same connection, imposed strict limitations upon the municipality with reference to the use of the general funds of the city. Chapter 335, Laws of the Thirty-ninth General Assembly, conferred no authority upon school boards to create special funds for the payment of obligations such as are here involved, nor does the act by its terms provide for such a fund when bonds are issued. Indeed, no authority whatever to create a special fund of the character appellant seeks to have established is conferred thereby or to be

implied therefrom. Chapter 335 is denominated an emergency act and was designed to enable certain school districts to erect or build a school building and to sell bonds in anticipation of taxes to be levied and collected in the future. The warrants are clearly mere obligations of the district and, if valid, would be collectible. This court would be compelled to go much further in this case to sustain the contention of appellant than was necessary in Swanson v. City of Ottumwa. The court is not inclined to extend the doctrine of that case.

It is the conclusion of the court that the warrants in controversy are, in terms and fact, general obligations of the district and that this court is powerless to grant the relief prayed. The transfer of a portion of the funds by the district to the schoolhouse fund may have been irregular, but appellant, as the holder of void warrants, may not complain thereof.

It is the conclusion of the court that the holding of the trial court is right.—Affirmed.

All Justices concur.