W. J. GRUNEWALD, Plaintiff, AND NANCY REED, Intervenor, Appellants, v. CITY OF CEDAR RAPIDS, AND FORD & DE LA HUNT.

Action to Enjoin Construction of Sewer: DISTRICTS: LEVY OF TAX.
1   Code, sections 794 and 1005 authorize a city council to provide by ordinance that the entire city shall constitute one sewer district, and to levy a special tax upon the district for the construction of a sewer system.

Levy of Tax: CONSTITUTIONAL LIMITATION: DEBT.  The levy of a
2   special tax for the construction of a sewer system, to be paid in installments, where the only obligation of the city is to levy, collect and pay over the tax, does not create a debt of the city within the meaning of section 3, article 11 of the constitution.

Chapter 29: ACTS 28TH GENERAL ASSEMBLY NOT APPLICABLE.  Chap-
3   ter 29 of the Acts of the 28th General Assembly has no application to the levy of taxes for the construction of a sewerage system within a sewerage district, but is limited to cases of special assessments on abutting property.

Levy of Tax for Whole District: SUSTAINED.  Where a city has
4   constructed lateral sewers at the expense of abutting property and trunk sewers at its own cost, the subsequent creation of a sewerage district and levy of a tax upon the district for the construction of other sewers, is not an arbitrary, oppressive and unreasonable exercise of power by the city.

Evidence: COLLUSION IN LETTING CONTRACT.  Evidence considered,
5   and charges of collusion and bad faith between the contractor and the officers of the city in making the contract are not sustained.

*Appeal from Cedar Rapids Superior Court.*—HON. J. H. ROTHROCK, Judge.

MONDAY, OCTOBER 27, 1902.

THE pleadings and evidence show that Cedar Rapids is a city under special charter, indebted to exceed its constitutional limit, with no money available for a district sewer fund, and that, notwithstanding this situation, its council adopted an ordinance creating of the entire city one sewer district, and, by appropriate resolutions, contracted with Ford & De La Hunt for the construction of a sewer system costing $102,767. The above ordinance also provided for the establishment of a fund to be known as the "district sewer fund;" that the cost of building or rebuilding be borne by the real estate within the district; that the council levy thereon the entire cost at one time to be apportioned in ten annual payments; that, in an anticipation of said payments, bonds should be issued as the work progressed, and might be paid the contractor, or sold, and the proceeds paid him; that the city should not be liable save for the proper levy and application of the said special taxes. This action was begun by W. J. Grunewald to test the validity of certain sections of the Code and the ordinances of the city, and prayed that the latter be declared void, and the contract invalid. Thereafter Nancy Reed intervened, and asked for substantially the same relief. Upon hearing, both the petition of plaintiff and that of intervener were dismissed, and they appeal.— *Affirmed.*

*T. M. Giberson* and *W. J. Grunewald* for appellant Grunewald. *J. A. Reed* and *Rickel, Crocker & Tourtellott* for appellant Reed.

*Redmond & Stewart* for appellees Ford & De La Hunt. *J. N. Hughes* for appellee City of Cedar Rapids.

LADD, C. J.—The practical object of this action is to enjoin the construction of a sewer system according to the district plan provided in the Code. The ordinance adopted by the council of Cedar Rapids in 1900 con-

1. SEWERAGE districts: levy of tax.

tains substantially the same provisions as the statutes. It created of the entire city one sewer district, as was authorized by section 794 of the Code, providing that the council "may by ordinance divide such city into such sewer districts as the council may determine, numbering them consecutively, or the entire city may be included in one district." See section 962. It also authorized the city council to levy at one time the whole of the cost of any such sewer as an assessment on all the taxable real property within said district subject to special taxation. Appellants contend that the statutes do not confer authority "to levy a district sewer fund on all the real estate" of the city included in a single district. The power to levy the tax for a sewer fund is found in subdivision 3 of section 1005 of the Code: "Where the city has been divided into sewer districts, a tax not exceeding five mills on the taxable real property in the district, for the district sewer fund, to be used to pay in whole or in part, the cost of the making, reconstruction or repair of any sewer located or laid in that particular district; provided that, on petition of the owners of two-thirds in value of all the taxable real estate within such sewer district for the construction of a sewer in such district, then the maximum percentage of taxes that can be levied in any one year shall not be limited to five mills but shall be such percentage of the valuation of such property as will produce at least one-tenth of the whole cost of such sewer assessable upon the real property in such district." The point made is that this section contemplated the creation of more than one district. It is plain, however, that the division suggested is that authorized by the statute here-.

tofore quoted. The very object in allowing the creation of one or more districts was to effectuate the just distribution of the burdens, imposed in making the improvement. Save for that purpose, nothing could be attained in dividing the city or by including it in one district. Words importing the plural number may be applied to one person or thing (section 48, Code), and, in order to give full effect to both sections, the last must be construed to have reference to such district or districts as may be formed under the authority of the first. *Grimmell v. City of Des Moines*, 57 Iowa, 144, is conclusive on this question.

II. Section 978 of the Code reads: "When the whole or any part of the cost of the making or reconstruction of any sewer shall be ordered paid from the district or city sewer fund, the council may after the completion, by resolution, levy at one time the whole or any part of the cost of such sewer upon all taxable real property within such sewer district, or within the district, and determine the whole percentage of taxes necessary to pay the same and the percentage to be paid each year, not exceeding the maximum annual limit of such taxes, and the number of years, not exceeding ten, given for the maturity of each installment." In pursuance of this authority the fourth paragraph of the ordinance enacted that: "The city council shall levy at one time the whole of the cost of any such sewer as an assessment upon all the taxable real property within said district, subject to special taxation, which assessment shall be due and payable in ten annual payments. One installment with interest at six per cent. upon the whole amount shall be due and payable at the same time as the general city tax next after making such levy; and one like installment, with interest on the amount remaining unpaid, each year thereafter until the whole amount is paid. The same shall become delinquent at the same time and bear the same

2. SAME: constitutional limitation: debt.

penalty as the general city tax." The municipality is only liable, under the ordinance and statute, for the levy and collection of the tax. As the city was indebted in excess of five per cent. of the taxable property therein, both this statute and the ordinance are assailed as being against the constitutional inhibition of an indebtedness "in any manner or for any purpose to an amount in the aggregate, exceeding five per cent. on the value of the taxable property within such county or corporation." Section 3, article 11, Constitution. There are two answers to this objection. The first is that a tax, in the legal sense, is not a debt. In the recent case of *Plymouth County v. Moore*, 114 Iowa, 700, we said: "The weight of judicial opinion seems to be that a tax is not a debt within the commonly accepted definition of that word." To the same effect, see *Burnham v. City of Milwaukee*, — Wis.— 73 N. W. Rep. 1018; *Sackett v. City of New Albany*, 88 Ind. 473 (45 Am. Rep. 467.) The second is that this tax, if a debt, is not an obligation of the city, but of each individual property holder. The municipality is bound to levy, collect, and pay over, and is answerable for nothing save the performance of these duties. See *Ft. Dodge Electric Light & Power Co. v. City of Ft. Dodge*, 115 Iowa, 568. It is not obligated to pay the money from any other source. Its duties end in compelling others to pay. Beyond this its obligation does not extend. In *Water Co. v. Woodward*, 49 Iowa, 58,—a somewhat similar case in principle,—the court said: "The obligation of the city is to levy the tax, and see that the amount collected is applied to the specified purposes. If the special fund legally provided is not sufficient, then it may be well said the deficiency is not payable by the city, and it is difficult to conceive that there can be such a thing as a debt which is never to be paid. No burden is created thereby, and there cannot be such indebtedness. In a constitutional sense the prohibited

indebtedness must be a burden, and payable by the city from funds which could not constitutionally be appropriated to that purpose." In *Allen v. City of Davenport*, 107 Iowa, 90, after referring to the above decision, our conclusion was thus stated: "If the city obligates itself to pay, no matter what its revenues from special assessments, a debt is created, which falls within the constitutional inhibition. If, however, it simply appropriates a part of its revenues, and pledges them to the payment of the obligation, or if it simply undertakes, as a trustee or agent, to collect these assessments, and apply them on the work, without liability on its part for anything further, then no debt is created." In an exhaustive review of the authorities generally by Weaver, J., in *Swanson v. City of Ottumwa*, 118 Iowa, 161, a similar plan, directed to the payment of a system of waterworks, was approved, "no good reason" being found "to condemn it as an unconstitutional exercise of municipal power." The scheme enables a city already involved in debt to provide for necessary improvements, or to procure public utilities on the installment plan. With the wisdom of conferring such a power we have no concern. Of necessity much must depend upon the discretion with which it shall be exercised and the objects to be attained. The rapid growth of many cities in the state has rendered it all but impossible to make necessary improvements with the funds available from the obligations within the constitutional limit, and this method of anticipating moneys to be paid in installments during a series of years, if not abused,—as we must assume it will not be,—may prove of great value to the people directly interested. As the limitation of the constitution is not on the power of taxation, the plan followed by the city is not obnoxious to i s provisions.

III. Appellant Reed also insists that chapter 29 of the Acts of the 28th General Assembly requires the cost

of construction to be first as e sed against the particular property benefited, and only the balance of the expense, after applying the fund so derived, be paid from the general sewer fund. The limitations of that chapter apply to special assessments on abutting property, and there is no basis whatever for this contention.

3. CERTAIN statute not applicable.

IV. Again, appellant Reed, conceding, for the sake of argument, the naked authority to enter into the contract and make the levy, urges that the exercise of this power has been so arbitrary, oppressive, and unreasonable that the court should interfere. This contention seems to be grounded on the assumption that sewerage has been established in a large portion of the city, and paid for by special assessment against the property benefited, and that the method proposed will charge such property again for similar improvements, from which no special benefit will be derived. The trouble with appellant's argument is that t ie facts are not as assumed. While the cost of lateral sewers has be in assessed to abutting property, in large part, at least, the main arteries, since 1885, have been constructed at the expense of the city. That year a comprehensive system of sanitary and stormwater sewerage was perfected by an engineer named Davis, and $100,000 raised by the sale of city bonds to begin its construction. It is agreed that the money was expended for that purpose, and trunk sewers have not been put in since, save at the cost of the city. In view of this situation it would seem that the plan proposed is less likely to result in discrimination in the distribution of the taxes than that which might result from a change in method of payment. *Independent School Dist. v. City of Burlington*, 60 Iowa, 500. Perfect equalization of tax burdens may never be expected, but in a series of years the plan adopted by the city council will be as likely as any other to equitably distribute the cost of such

4. LEVY of tax for whole district.

improvements as here proposed, not especially, though often incidentally, beneficial to abutting owners.

V. The charge of collusion and bad faith in bringing the suit is unsupported by the evidence. The claim that favoritism was shown the successful bidder is without

5. EVIDENCE: collusion in letting contract.

foundation. It seems that the bonds, as they were to bear six per cent. interest, are marketable at a considera..le premium; and, without the slightest evidence to sustain the accusation, intervener argues that the mayor of the city secretly advised Ford & De La Hunt that they would be paid in bonds, rather than from the proceeds of a sale thereof; and that, because of this information, they were given an unfair advantage and enabled to underbid competitors. The city ordinance, in harmony with the statute, provided that the bonds may be sold at public or private sale, or to the contractor in payment of the sewer. The specifications were silent as to the manner of payment, but the resolution ordering the construction of the sewer stipulated that they were "to be paid for in storm water sewer bonds." The published notice for bids contained the same clause, and the fact that Ford knew his firm was to receive bonds in payment for the work was better evidence of the possession of ordinary intelligence and the ability to read than of some secret connection with the executive officers of the city. If other bidders were equally fortunate, they could experience no difficulty in ascertaining that payment was to be made in bonds. The recklessness of the charge is further illustrated by the fact that the successful bid was $14,914 lower than any other, while the probable premium on the bonds according to the evidence, will not exceed $8,000. That the mayor was a member of the firm of lawyers employed by the contractor in this action is not evidence that he was retained prior to its beginning. The accusation in its entirety is without foundation. The court rightly dismissed both petitions.—AFFIRMED.