GREGORY BRUNK, Plaintiff, Appellant, v. CITY OF DES MOINES et al., Defendants, Appellees; BALLARD-HASSETT COMPANY, Intervenor, Appellee.

No. 45133.

April 2, 1940.

Intervenor-Appellee's Application for Clarification of Opinion With Respect to Remedy Denied June 20, 1940.

Brunk, Janss & Bauch, Chauncey A. Weaver, and Milton S. Weinberger, for appellant.

F. T. Van Liew and B. J. Flick, for Councilmen, appellees.

Francis J. Kuble and James P. Irish, for Auditor and Treasurer of Polk County, appellees.

William L. Hassett, for intervenor, appellee.

Mitchell, J.—The facts in this case are stipulated. It is

agreed that Gregory Brunk is a resident and taxpayer of the City of Des Moines, Iowa. That the City of Des Moines is a municipal corporation, located in Polk county, organized and existing under the laws of Iowa and operating under the commission plan of government. That the Ballard-Hassett Company is a corporation organized under the laws of the state of Delaware and authorized to do business as an investment dealer within the state of Iowa. That the City of Des Moines has adopted certain resolutions and proceedings preparatory to the issuance, sale and delivery, and does propose, unless restrained to issue, sell and deliver three separate issues of bonds in the following principal amounts:

$142,000 Emergency Fund Bonds

$107,000 Bridge Bonds

$ 40,000 Fire Fund Bonds

Then follows paragraph 12 of the stipulation which is as follows:

"Par. 12. That if, as a matter of law, the said bonds proposed to be issued, or any of them, constitute an indebtedness of the defendant, City of Des Moines, within the purview of Section 3, of Article XI of the Constitution of the State of Iowa, then and in that event the total indebtedness of the defendant, City of Des Moines, Iowa, within the purview of Section 3, Article XI of the Constitution of the State of Iowa, is in excess of the limitation provided in said constitutional provision."

The lower court refused to grant the injunction prayed for, and the taxpayer has appealed.

The only question for decision in this case is whether or not the bonds proposed to be issued constitute an "indebtedness" of the City of Des Moines within the purview of section 3, Article XI of the Constitution of the state of Iowa.

Section 3, Article XI, is as follows:

"Indebtedness of political or municipal corporations.

Sec. 3. No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last State and county tax lists, previous to the incurring of such indebtedness.''

The above-quoted section provides that no ''municipal corporation shall be allowed to become indebted *in any manner or for any purpose,* to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such corporation.'' [Italics supplied.] The language is plain and unambiguous, and one would think that there would be no trouble in ascertaining just what the writers of the constitution meant when they inserted section 3.

Our state and municipal governments exist by sufferance of the people. Under our law the people granted unto the state and cities the power under which they function. Through our constitution written by the people and for their benefit, these cities derive their limited and restricted power.

We set out now the plan by which it is claimed these bonds, which the city now proposes to issue, are not the indebtedness of the city, within the meaning of the constitutional limitation.

These words were authorized by the Forty-eighth General Assembly. This enactment authorizes, first the levy of a tax of ''not to exceed one mill upon the taxable property of the municipality.'' This levy refers to the emergency fund tax, the same procedure was used for the bridge bonds and the fire fund bonds. Next it provides that the city ''may anticipate said tax by the issuance of bonds in accordance, so far as applicable, with the provisions of Chapter 320, Code 1935.'' The applicable portion of chapter 320 is found in sections 6261 to 6263, inclusive, of said chapter 320. Section 6261 provides authority for the anticipation of the collection of various special taxes ''and for that purpose may issue certificates or bonds with interest coupons.'' Section 6262 simply provides how such

certificates or bonds shall be named. Section 6263 is, from the point of view of the question for decision in the instant case, the most significant. It reads as follows:

"Assessments and levies pledged. Said certificates or bonds and interest thereon shall be secured by said assessments and levies, and shall be payable only out of the respective funds named, pledged to the payment of the same, and no certificates or bonds shall be issued in excess of taxes authorized and levied to secure the payment of the same. It shall be the duty of said city to collect said several funds with interest thereon and to hold same separate and apart, in trust, for the payment of said certificates or bonds and interest, and to apply the proceeds of said funds pledged for that purpose to the payment of said certificates or bonds and interest."

Now pursuant to that specific authority of the legislature of the state of Iowa, the City of Des Moines has adopted the resolution providing for the form and issuance of these bonds which resolution is identified as Exhibit A of the stipulation of facts. Section 1 of that resolution is as follows:

"Section 1. That pursuant to the provisions of Chapter 53 of the Acts of the 48th G. A. of Iowa, there shall be and there is hereby levied and there shall be assessed and collected a direct annual tax upon the taxable property within said City, subject to said tax, in each and every year beginning with the levy to be made in the year 1940, for collection in the year 1941, and ending with the levy to be made in the year 1942, for collection in the year 1943, sufficient to produce the following sums, to-wit:

1940 ................. $58,729.00
1941 ................. $56,402.50
1942 ................. $55,176.00

"The County Auditor of Polk County, Iowa, is hereby instructed to spread upon his records and certify to the County Treasurer in and for each of the foregoing years,

within the maximum amount permitted by Section 373, Code, 1935, a levy of tax sufficient to produce the amount of money above set out in and for each of said years.''

Section 3 of the resolution provides for the issuance of the bonds ''in anticipation of the collection of the Emergency Fund Tax levied in Section 1 hereof''.

Section 4 of the resolution provides the form of the bonds. Therein the City promises to pay ''out of the fund hereinafter specified''; recites that the bonds are issued '' in anticipation of the collection of the Emergency Fund Tax''; and provides that ''this bond and interest hereon are payable only out of the Emergency Fund for which a continuing annual tax has been duly levied on all of the taxable property in said city and which is pledged solely for the payment of principal and interest on said series of bonds.''

Briefly stated, then, what the City of Des Moines has done is to levy a tax of $58,729 for the year 1940 (collectible in 1941), $56,402.50 for the year 1941, and $55,176 for the year 1942. Under the resolution that tax for those specific years has been certified to the county auditor with instruction to spread and collect it. .

After the levy of these taxes, the City of Des Moines assigned the taxes levied for certain specific years, to the holder of the bonds, involved in this action.

It is claimed by appellees, that the levy being made in advance for certain number of years, becomes an asset of the City of Des Moines, and by assigning that asset, out of which the bonds are to be paid, and the bonds containing the provision that they are to be paid solely out of these levies, which have been made, the bonds are not the indebtedness of the City of Des Moines.

No doubt it is difficult for the owner of property, whether it be a large amount or a small home of some laboring man, to understand when he pays his taxes that the levy to pay these taxes is not to pay the indebtedness of the City. The levy is against every dollar of property in the taxing district. It is

paid in the same manner and at the same time that all other taxes are paid, including the levy to pay the indebtedness of the City. It comes out of the same pocket and it is of little help to the taxpayer to tell him it is not indebtedness within the meaning of the constitution.

The question which confronts us in this case has been before this court before. Some 38 years ago the court answered it in the case of Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, and unless we are to overrule that decision, this case must be affirmed.

In the Swanson case, the City of Ottumwa proposed to issue $400,000 worth of bonds to build a new municipal waterworks. The bonds were payable from the proceeds of a 50-year two-mill levy on all taxable property in the City. Any deficiency in that fund was to be made up, so far as necessary by a five-mill tax. As additional security the waterworks and the earnings were pledged as collateral to the payment of the bonds. It was conceded as in this case if the bonds were the indebtedness of the City of Ottumwa, they exceeded the constitutional limitation.

This court speaking through Justice Weaver, 118 Iowa 161, 170, 91 N. W. 1048, 1051, said:

"* * * a careful examination of the decisions discloses the fact that in substantially every jurisdiction the word 'debt' or 'indebtedness', as used in the limitation placed upon municipal power, is given a meaning much less broad and comprehensive than it bears in general usage. This tendency has been more marked in some states than in others, with the result that the decisions are sufficiently at variance to fairly justify the statement of an eminent court that 'in view of the warring among the adjudged cases, it is not easy to affirm that the word "debt" has a firmly settled meaning.' "

Just 32 days after the opinion was filed in this court in the Swanson case, the United States circuit court of appeals

flatly disagreed with its result, when considering exactly the same facts in City of Ottumwa v. City Water Supply Company, 8 Cir., 119 F. 315. So we are confronted with two courts writing opposite opinions upon the same facts within a few days of each other.

We quote from the opinion by the circuit court of appeals:

"It is admitted that if the scheme contemplated the payment of the bonds only from a two-mill tax, which was agreed to be levied year by year for their payment, an indebtedness of the city would be created; but it is contended that by making one levy now of an annual two-mill tax, to be collected of the taxpayers year by year for 50 years, or till the bonds are paid, and from which fund only they are to be paid, no indebtedness is created, and that the borrowing of the money for which the bonds are negotiated is but a simple method of anticipating for present use the future revenue, which will come from the tax so levied covering the future years. We think the taxpayer in future years will regard this scheme as a subterfuge to deprive him of the protection of the constitution, and that the thought will force itself upon him that a city creates an indebtedness when it borrows money to be paid, with interest, from taxes in the future, whether such taxes are formally levied at one time, covering that future or yearly, to meet the payments when about to mature."

It seems to us that it completely annihilated the basic philosophy of the so-called "asset theory" when it said:

"If this may be done to build waterworks, the city may go on, and in the same way borrow and issue its bonds for an equal amount to build public buildings, and for another equal amount to construct a system of sewers, and for another equal amount to construct modern schoolhouses, and an unlimited amount as bonus to some railroad, taking care in each case to levy once for all a sufficient annual tax to meet the maturing bonds; and, though the property

of the taxpayers may be thus practically confiscated, by being loaded down with taxes beyond any income which the property can produce, and for periods beyond any expectation of life which the taxpayers can indulge in, still those taxpayers, while groaning under such special levies, fixed upon them and extending hopelessly into the future, will have the happiness and satisfaction of knowing that they live in a city which has no municipal indebtedness large enough to cause uneasiness. * * *

"We have examined carefully the opinion in Swanson v. Ottumwa and the cases which are supposed to give support to its conclusions. It will not be profitable to review in detail the reasoning employed to reach the result arrived at. To our minds it is not persuasive, and we decline to be guided by it. Its citations exhibit the unceasing attempts in that state and some others to nullify and evade wholesome constitutional limitations upon the power of municipalities to create indebtedness, and thus place intolerable burdens on the taxpayers; and its reasoning but adopts the ingenious but obviously untenable arguments by which such attempts have ever been supported. * * *

"And that court overlooks or ignores the fact that future taxation for the payment of the bonds under specified circumstances and if the provided fund shall happen to be in any year insufficient to pay the maturing principal and interest, is distinctly provided for by the ordinances and proposed contract under consideration, which provides that there shall be levied every year after the construction of the waterworks a water tax of five mills on the dollar, 'or so much thereof as may be necessary, together with the net proceeds of the water rents, to pay the cost of maintenance, repairs,' etc., 'and to pay any of the purchase price or cost of constructing said works, or bonds or mortgages issued therefor, or interest thereon, which shall not be paid from the proceeds of the two-mill tax provided for in section two hereof.' ''

Judge Dillon in his famous work on Municipal Corporations [5th Ed.] talked about the Swanson case in section 198 when he said:

"The question whether under the Iowa Constitution the legislature may by statute authorize a city to make a contract payable exclusively from a special levy for the purpose of defraying the cost of an improvement of general interest, such as a water works, without creating indebtedness, has been before the State and Federal courts in two cases, involving the same statute, ordinance, and contract, and decisions were rendered by these courts diametrically opposed to each other. The State court held that the legislature might properly authorize the levy of such a tax; that a fund created thereby was essentially a special fund in the same sense that a fund created by the levy of a special assessment is, there being no real difference between such a fund and a special assessment, and that bonds issued by the city payable only from such tax would not create an indebtedness within the meaning of the constitutional provision. The same statute, contract, and ordinance came before the Federal court in an action seeking identically the same relief. That court was of the opinion that the scheme of the statute and the proposed transaction constituted an evident evasion of the purpose and intent of the constitutional limitation upon the power of the city, and held that it necessarily involved a resort to the general power of taxation of the city, and that the ordinance and contract created an indebtedness in violation of the Constitution."

In 59 L. R. A., page 604 [8 Cir., 119 F. 315], after setting out in full both the state and federal decisions the editorial writer said:

"The problem how to permit the obtaining of these necessities without violating the prohibitory law is then a very serious one. Various expedients have been resorted to,

but Iowa seems to have exceeded the other states in expedients for evading the limit. * * * Ottumwa v. City Water Supply Co. is certainly more nearly within the spirit of the prohibition, and will more effectually obviate the evil than will the other case. * * * If the fund is to come from a source for which the municipality is not responsible, no liability against it is created; but if it is to come from a special tax on the inhabitants of the municipality, no distinction is perceived between such fund and one created by general taxation.''

In Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, on page 559, 49 S. 417, the facts may be sufficiently stated in the language of the court on page 422, as follows:

"The case of Swanson v. Ottumwa, 118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620, is cited and relied upon as supporting this contention; and it must be conceded that it does so. Not only is this true, but it is quite apparent, from a comparison of the resolutions and the contract there involved with those dealt with in this case, that the scheme here to be passed upon was extracted in toto from the Swanson Case.''

The court continued with reference thereto as follows:

" 'To say that a sum of money due or owing A. to B. is not a debt, because A. has promised to appropriate, or has appropriated, a portion of his future income to its payment, is a proposition in legal metaphysics' that seems incomprehensible. * * * if the sum contract to be paid for the courthouse, completed and furnished, is not a debt, because there is a levy of taxes, running through a series of years, to be annually collected from all the taxable property in the county, 'till the sum to be paid is paid therefrom,' and because the contract provides nonliability, and that the warrants shall be paid only from such taxes so specially levied—then it must be in the power of the court of county commissioners, by mere 'jugglery with words',

to evade the plain mandate of the Constitution. * * * We cannot assent to the reasoning by which the conclusion is reached that the contract in question does not create a debt. 'By means of such artificial reasoning and unlooked for construction of popular and plain terms and phrases, Constitutions might be stripped of every prohibition upon the legislative power of taxation and creating indebtedness, which the wisdom or fears of the people might place on them.' Our conclusion is that, whatever may be the decisions of the courts of other jurisdictions, the contract in question creates an indebtedness.''

In Feil v. City of Coeur D'Alene, 23 Idaho 32, 129 P. 643, the court again directly attacks the Swanson case in language as follows:

''The Swanson case was based upon the specious reasoning that where an obligation is incurred in anticipation of revenues yet to be collected which are to go into a special fund pledged to the payment of such obligation, no debt is incurred, although those revenues are to be collected for a long series of years in the future. * * * We are aware that such a holding has frequently been made, and correctly so, too, we think, where the obligation or liability incurred anticipates the revenues already provided for for that year, and where the revenues of the current year will meet and liquidate the obligation. * * * But the Iowa court clearly carried this principle to the limit, and far beyond what other courts had done when it held that the same principle is applicable where the revenues have been anticipated for twenty-two years in advance and a sum of money has been raised for present expenditure to the aggregate sum of the anticipated revenue to be collected through such a series of years.''

In Brix v. Clatsop County, 46 Or. 223, 80 P. 650, the court said:

''If this may be done for the construction of a court-

house, it may be done for highways, bridges, poor farms, hospitals, jails, and the like corporate expenses, and the property of the taxpayers may thus be burdened for years to come, contrary to the provisions and spirit of the constitution. It would not be particularly comforting to a taxpayer so situated to be told, while groaning under such special levies, extending hopelessly into the future, that he could congratulate himself that he lived in a county which was not indebted more than $5,000. The reasoning which results in such a conclusion is to us unsound. The constitution was intended to protect the taxpayers. * * * Swanson v. City of Ottumwa, 118 Iowa, 161 (91 N. W. 1048, 59 L. R. A. 620), is contrary to this view; but the question decided in that case arose about the same time in a case pending in the circuit court of appeals, and was there decided adversely to that of the Iowa court. Ottumwa v. City Water Co., 119 Fed. 315 (56 C. C. A. 219, 59 L. R. A. 604). The opinion in the latter case, written by Judge Lochren, was concurred in by Judges Sanborn and Thayer, and is a clear, able and convincing decision, and seems to us a more logical, reasonable, and safe one than that of the Iowa court.''

In Holmgren v. City of Moline, 269 Ill. 248, 109 N. E. 1031, the court stated:

''The State of Iowa has a constitutional provision similar to ours. This question arose in that State, and in Swanson v. City of Ottumwa, 59 L. R. A. 620 (118 Iowa 161) the Supreme Court of Iowa held that the issue of bonds by a municipality to procure funds for a water supply, which are payable out of a sinking fund to be provided by a special tax upon the property within the municipality, and for which there can be no general liability on the part of the city, does not create an indebtedness within the meaning of the constitutional limitation of municipal indebtedness. In that suit brought in the State court it was

held that the issue of the bonds could not be enjoined, but the same question was brought before the United States circuit court of appeals in a suit by a non-resident of the State to enjoin the issue of the same bonds, and the latter court, treating the question as one of general law, in which the Federal courts are not bound by State decisions, held that the issue of the bonds would create an indebtedness against the city and affirmed the judgment of the circuit court enjoining their issue. (City of Ottumwa v. City Water Supply Co., 119 Fed. 315; 59 L. R. A. 604.) The latter decision is in accord with our decisions which have been cited.''

Without specifically citing the Iowa case, the court in Crick v. Rash, 190 Ky. 820, 836, 229 S. W. 63, attacked the doctrine of the Swanson case on page 70 of the decision in the following pertinent language:

''Under this contention the legislature, or the debt contracting authority, could divide the public revenue into numerous subdivisions, calling one the 'Road fund', another the 'School fund', another the 'Agricultural fund', another the 'Public Health fund', and others almost without limit. Debts could then be contracted in unlimited amounts and payable in the far distant future, and still be immune from attack as violating constitutional provisions limiting indebtedness, provided each debt was made payable out of some one of the specially designated funds into which all of the revenue collected by taxation from the people had been divided. A mere statement of the proposition carries with it, it seems to us, its own refutation.''

Able briefs have been furnished us by the distinguished counsel representing the appellees and also by a friend of the court. They rely upon the cases of Swanson v. City of Ottumwa, and Grunewald v. City of Cedar Rapids, 118 Iowa 222, 91

N. W. 1059. Both of these opinions were written at the same time, and filed within two days of each other. Appellee argues that the property owner is not injured, that he would be required to pay the tax levied, when same became due. Of course the taxpayer will be required to pay the tax when it becomes due, but there will be no interest to pay. In the case at bar these bonds draw 4½ percent interest, and out of the pockets of the taxpayers will have to come the amount necessary to pay the interest, in this case which amounts to between $2,000 and $2,500. If it can be said that the bonds proposed to be issued are not the indebtedness of the city of Des Moines, the constitutional limitation means little if anything. For levies could be made for swimming pools, football fields, bridges, roads, public parks, and so on, they could cover not 5 but 50 years, the amount of bonds could be up in the millions, and the property owner paying his taxes in the years to come might have no idea for what the money was spent, as long ago the improvement might have wasted away in the march of time.

The argument is made that the improvements are good ones. We do not doubt that, but the limitation upon indebtedness, is in the constitution. It cannot be changed by this or any other court, if the people desire they have the right to change it, by changing the constitutional limitations but that right is solely in the hands of the people and not the courts.

And so this court as it is now composed, after careful consideration has to come to the conclusion that the rule announced in Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, and in Grunewald v. City of Cedar Rapids, 118 Iowa 222, 91 N. W. 1059, is wrong and the opinions in these cases are overruled. That the bonds purposed to be sold in this case are the indebtedness of the City of Des Moines, and as they exceed the constitutional limitations of indebtedness, the city will be enjoined from issuing and selling same. The distinguished trial court at the time that he refused the relief prayed for, stated that he did not agree with the rule laid down in the Swanson case, but that it was the law of this state and he was bound to

follow it. It necessarily follows that this case must be and it is hereby reversed and remanded.—Reversed.

SAGER, RICHARDS, MILLER, OLIVER, HALE, and BLISS, JJ., concur.

HAMILTON, C. J., concurs in result.